UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LOCAL UNION 40 of the INTERNATIONAL
ASSOCIATION OF BRIDGE, STRUCTURAL,
ORNAMENTAL, & REINFORCING IRON
WORKERS AFL-CIO,                                            :

                           Plaintiff,                         :

          - against -                                            :                    <u>COMPLAINT</u>

BOVIS LEND LEASE LMB, INC.,                                 :
LVI ENVIRONMENTAL SERVICES, INC.,
LVI SERVICES, INC. and JV TRUCKING &                        :
RIGGING, LLC,                                               :

                        Defendants.                        :

-------------------------------------------------------------X



       Plaintiff, LOCAL UNION 40 of the INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL, & REINFORCING IRON WORKERS AFL-CIO, (hereinafter "LOCAL 40" or "Plaintiff") by its attorneys, COLLERAN, O'HARA & MILLS L.L.P., hereby complains against the above referenced Defendants upon information and belief as follows:

<u>**NATURE OF ACTION**</u>

      1.     The Plaintiff, a labor organization, brings this breach of contract action for violation on the part of the Defendants of a contract, which, <u>inter alia</u>, governs the assignment of demolition work with power within the City of New York. Pursuant to said contract, the performance of demolition work with power is under the jurisdiction of the Plaintiff in the City of New York. Defendants have violated and continue to violate said contract by refusing to hire and/or subcontract the demolition work at a jobsite located at 130 Liberty Street in accordance

1

with said contract, to subcontractors who have collective bargaining agreements with Plaintiff. Plaintiff seeks monetary damages for lost wages, fringe benefit contributions, union working assessment, attorney's fees, costs and permanent injunction enforcing the contract.

## JURISDICTION

2.      Jurisdiction is conferred on this court pursuant to Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce... may be brought in any district court of the United States having jurisdiction of the parties..."

## PARTIES

3.      The Plaintiff, LOCAL 40, is a labor organization as that term is defined in Section 2(5) of the LMRA, 29 U.S.C. § 152(5).

4.      LOCAL 40 maintains its principal place of business located at 451 Park Avenue South, New York, New York 10016.

5.      LOCAL 40 is a member of the New York City Building and Construction Trades Council ("BCTC").

6.      Defendant, BOVIS LEND LEASE LMB INC. ("BOVIS"), is a domestic corporation with its principal place of business located at 200 Park Avenue, New York, New York 10166.

7.      BOVIS is a foreign corporation with its principal place of business located at 200 Park Avenue, New York, New York 10166, authorized to do business in the State of New York.

8.      BOVIS is a member of the Contractors' Association of Greater New York, Inc. ("CAGNY"), a multi-employer association of construction managers and general contractors

operating in the metropolitan New York area. CAGNY is a member of Building Trades Employers' Association ("BTEA"). CAGNY also serves as a collective bargaining representative in the negotiation of labor agreements with its affiliated trade unions.

9.      BOVIS is a party to the New York Plan by virtue of its membership in CAGNY, which in turn is a member of the BTEA.

10.     BOVIS is an employer as that term is defined in Section 2(2) of the LMRA 29 U.S.C. § 152(2).

11.     Defendant,   LVI   ENVIRONMENTAL   SERVICES   INC.   ("LVI ENVIRONMENTAL"), is a domestic corporation with its principal place of business located at 80 Broad Street, 3rd Floor, New York, New York 10004.

12.     LVI ENVIRONMENTAL is a foreign corporation with its principal place of business located at 80 Broad Street, 3rd Floor, New York, New York 10004, authorized to transact business in the State of New York.

13.     LVI ENVIRONMENTAL is a party to the New York Plan by virtue of its membership in an employers' association which is a member of the BTEA.

14.     LVI ENVIRONMENTAL is an employer as that term is defined in Section 2(2) of the LMRA 29 U.S.C. § 152(2).

15.     Defendant, LVI SERVICES INC. ("LVI SERVICES"), is a domestic corporation with its principal place of business located at 80 Broad Street, 3rd Floor, New York, New York 10004.

16.     LVI SERVICES is a foreign corporation with its principal place of business located at 80 Broad Street, 3rd Floor, New York, New York 10004, authorized to transact business in the State of New York.

17.     LVI SERVICES is a party to the New York Plan by virtue of its membership in an employers' association which is a member of the BTEA.

18.     LVI SERVICES is an employer as that term is defined in Section 2(2) of the LMRA 29 U.S.C. § 152(2).

19.     LVI SERVICES and LVI ENVIRONMENTAL are a single employer, successor and/or alter-ego of each and as such have joint and severable liability for the damages alleged in this action.

20.     Defendant, JV TRUCKING & RIGGING ("JV RIGGING"), is a domestic corporation with its principal place of business located at 29 Longstreet Road, Manalapan, New Jersey 07726.

21.     JV RIGGING is a foreign corporation with its principal place of business located at 29 Longstreet Road, Manalapan, New Jersey 07726, authorized to transact business in the State of New York.

22.     JV RIGGING is a party to the New York Plan by virtue of its membership in an employers' association which is a member of the BTEA.

23.     JV RIGGING is an employer as that term is defined in Section 2(2) of the LMRA 29 U.S.C. § 152(2).

**FACTS**

**THE NEW YORK PLAN**

24.     In 1903, certain labor organizations in New York City, engaged in the construction industry or building trades, entered into a contract with each other and with certain employees in the same industry for the settlement of jurisdictional disputes.  At various times, local labor organizations and employers that were or subsequently became parties thereto have

amended the same; such agreement became known as the New York Plan for the Settlement of Jurisdictional Disputes ("New York Plan" or "Plan").

25.     Labor organizations are parties to and bound by the New York Plan by virtue of their membership in the BCTC.  LOCAL 40 is a party to the New York Plan by virtue of its affiliation with the BCTC.

26.     Employers are parties to, and bound by, the New York Plan by virtue of their membership in the BTEA.

27.     Each of the Defendants is a party to the New York Plan by virtue of its membership in an employers' association which is a member of the BTEA.

28.     The New York Plan is a contract between an employer and a labor organization representing employees in an industry affecting commerce within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

29.     The New York Plan provides, and at all relevant times has provided, a procedure for the settlement of jurisdictional disputes arising in New York City.  The Plan procedures provided for the arbitration of disputes that cannot be settled directly by the representatives of the contending labor organizations or through mediation by the President of the BTEA and President of the BCTC.

30.     The New York Plan provides in Article V, Section 3(1) thereof, that, "[t]he decisions and awards rendered pursuant to an arbitration hearing are final and binding and shall thereafter govern the awarding of work of the kind in question on all future jobs and shall be binding on all those bound to this Plan without regard to their participation in the underlying arbitration."  Article V, Section 3(1) further provides that all such decisions and awards shall be incorporated in the "Green Book" published by the BCTC and BTEA.

31.     The New York Plan provides in Article VI, Section 3, thereof, that it shall be a violation of the Plan "for entities bound to this Plan, to enter into any agreement, resolution process, or stipulation that: a) attempts to establish any jurisdiction which deviates from the spirit and intent of this Agreement, its procedures or decisions of this Plan..."

32.     The New York Plan provides, in Article VI, Section 4 thereof, that any violation of the Plan "by any entity bound hereto shall constitute a breach of the Agreement and provides that the parties to the underlying dispute shall have standing to commence an enforcement action."

33.     The New York Plan provides at Article III, Section 2 thereof, that "[t]he BTEA, as well as employers and employer associations, general contractors, construction managers, or project coordinators that are bound to the Plan agree that subcontracted work shall be assigned in accordance with Green Book decisions."

34.     Article IV, Section 1 of the Plan provides, in pertinent part, that "[a]ll entities bound to this Plan, including but not limited to construction managers, project coordinators, general contractors and subcontractors, shall make all work assignments to BCTC affiliates bound to this Plan and in accordance with the Green Book decisions of the Plan."

## GREEN BOOK DECISIONS

35.     Green Book decision 70-2c states in relevant part: "The Committee finds that, where power is used in taking down and removing steel connection with demolition, the work is in the possession of structural ironworkers;…"

36.     Green Book decision 70-3c states in relevant part: "The committee finds that on buildings where structural steel is being demolished along with other building materials, and power equipment is being used in connection with the demolition, the slinging of and the

6

hooking on of drafts of materials, or other heavy lifts, other than steel, which may have been prepared by house wreckers, together with all hoisting and lowering and the loading into trucks, is the work of the iron workers…"

## DEUTSCHE BANK BUILDING DEMOLITION

37.     On September 11, 2001, the building located at 130 Liberty Street in lower Manhattan was substantially damaged as a result of terrorist attacks.

38.     Several years later, the owner of 130 Liberty Street, Deutsche Bank AG, sold the damaged property to the Lower Manhattan Development Corporation ("LMDC"). The LMDC purchased 130 Liberty Street with the intent to remove the existing structure and redevelop the property.

39.     The LMDC is a subsidiary of the Urban Development Corporation d/b/a Empire State Development Corporation, a corporate governmental agency and public benefit corporation organized under the laws of the State of New York.

40.     On or about October 20, 2005, BOVIS entered into an abatement and deconstruction contract with the LMDC that provides that BOVIS is responsible for project management services relating to the decontamination and deconstruction of the building located at 130 Liberty Street ("Deutsche Bank Building" or "Project").

41.     BOVIS entered into two trade contracts with The John Galt Corporation dated February 13, 2006 and February 21, 2006, for the performance of all deconstruction and decontamination under the Contract.

42.     The John Galt Corporation employed members of LOCAL 40 to perform the structural steel demolition of the Deutsche Bank Building.

43.     Members of LOCAL 40 performed the demolition with power of the Deutsche Bank Building for all periods of time prior to August 18, 2007. In addition to the wages received by the members of LOCAL 40 that worked on the Deutsche Bank Building demolition, fringe benefit contributions were paid for every hour paid to the Iron Workers Locals 40, 361 & 417 Union Security Funds and working assessment contributions were paid to LOCAL 40 for every hour paid.

44.     On August 18, 2007, a fire broke out on the 17th floor of the Deutsche Bank building. As a result, abatement and demolition worked was stopped at the Project.

45.     Members of LOCAL 40 were not on site the day the fire occurred at the Deutsche Bank Building.

46.     On August 28, 2007, BOVIS terminated its contracts with The John Galt Corporation.

47.     On September 10, 2007, LMDC received a regulatory directive to separate the abatement and deconstruction work at the Project into separate and sequential phases of work.

48.     In January 2008, BOVIS engaged LVI ENVIRONMENTAL as the new remediation and deconstruction subcontractor to complete the scope of work original contracted to The John Galt Corporation on a sequential basis.

49.     In January 2008, BOVIS engaged LVI SERVICES as the new remediation and deconstruction subcontractor to complete the scope of work original contracted to The John Galt Corporation on a sequential basis.

50.     On January 10, 2008, LVI ENVIRONMENTAL commenced abatement activity at the Project.

51.     On January 10, 2008, LVI SERVICES commenced abatement activity at the Project.

52.     In or about April 2009, LOCAL 40's Business Manager, Robert Walsh, called BOVIS' Senior Vice President, Steven Sommer, to discuss the demolition phase of the Project.

53.     In or about May 2009, a meeting was held between LOCAL 40, BOVIS, LVI ENVIRONMENTAL and/or LVI SERVICES to discuss the demolition phase of the Project. At this meeting, LOCAL 40 explained that the demolition work at this project was the work of the Plaintiff pursuant to the New York Plan's Green Book's decision 70-2c and 70-3c and that the Plaintiff's members had previously performed all demolition work with power on the Deutsche Bank Building demolition jobsite.

54.     At this May 2009 meeting, BOVIS explained the LOCAL 40 collective bargaining agreement to the representatives of LVI ENVIRONMENTAL and/or LVI SERVICES.

55.     On September 10, 2009, BOVIS notified the LMDC that the abatement phase of the Project had been completed.

56.     In or about November 2009, a second meeting was held between LOCAL 40, BOVIS, LVI ENVIRONMENTAL and/or LVI SERVICES to discuss the demolition phase of the Project. At this meeting, LOCAL 40 explained that the demolition work at this project was the work of the Plaintiff pursuant to the New York Plan's Green Book's decisions 70-2c and 70-3c.

57.     On or about November 16, 2009, the Defendants started the demolition phase of the Project without employing LOCAL 40 iron workers.

58.     On December 14, 2009, a third meeting was held at BOVIS' corporate headquarters with representatives from the New York State Iron Workers District Council, LOCAL 40, Iron Workers Local 361, Laborers Local 79, BOVIS and LVI SERVICES.

59.     Donald DeNardo and Steven Sommer attended this meeting on behalf of BOVIS.

60.     Edward Walsh attended this meeting on behalf of the New York State Iron Workers District Council.

61.     Robert Walsh, Kevin O'Rourke and Daniel Doyle attended this meeting on behalf of LOCAL 40.

62.     Richard O'Kane attended this meeting on behalf of Iron Workers Local 361.

63.     George Zecca and Ken Broncaccio attended this meeting on behalf of Laborers Local 79.

64.     James Mooney and Edward King attended this meeting on behalf of LVI ENVIRONMENTAL and/or LVI SERVICES.

65.     At this meeting, LOCAL 40 and New York State Iron Workers District Council explained that the demolition work at this project was the work of the iron worker pursuant to the New York Plan's Green Book's decisions 70-2c and 70-3c and that the demolition work at the Project was required to be assigned to LOCAL 40, and that LOCAL 40 had performed the demolition work prior to August 18, 2007.

66.     At this meeting, representatives of Laborers Local 79 agreed that the demolition work at the Project was the work of the LOCAL 40 iron worker and that the demolition work at the project was required to be performed by LOCAL 40 iron workers.

67.     At this meeting, LVI ENVIRONMENTAL and/or LVI SERVICES indicated it would not sign a contract with LOCAL 40 or hire LOCAL 40 iron workers, but that it would

look to subcontract the demolition work to an iron work contractor that would comply with the Green Book decision. LOCAL 40 suggested to BOVIS and LVI ENVIRONMENTAL and/or LVI SERVICES the names of two structural steel contractors that would perform the demolition work in compliance with the Green Book decision, namely Metropolitan Metals and AJ McNulty.

68.     After the December 2009 meeting, BOVIS prepared and sent a list of terms and demands called "130 Liberty Deconstruction Iron Workers Local 40 Expectations" to LOCAL 40 contractor AJ McNulty. BOVIS' proposed terms and demands called "130 Liberty Deconstruction Iron Workers Local 40 Expectations" required AJ McNulty to seek and obtain concessions from LOCAL 40 from its collective bargaining agreement in order to be awarded the iron work contract for the demolition work.

69.     After the December 2009 meeting, LVI ENVIRONMENTAL and/or LVI SERVICES prepared and sent a list of terms and demands called "130 Liberty Deconstruction Iron Workers Local 40 Expectations" to LOCAL 40 contractor AJ McNulty. LVI ENVIRONMENTAL and/or LVI SERVICES proposed terms and demands called "130 Liberty Deconstruction Iron Workers Local 40 Expectations" required AJ McNulty to seek and obtain concessions from LOCAL 40 from its collective bargaining agreement in order to be awarded the iron work contract for the demolition work.

70.     AJ McNulty contacted LOCAL 40 and advised LOCAL 40 that concessions from the LOCAL 40 collective bargaining agreement were requested by BOVIS, LVI ENVIRONMENTAL and/or LVI SERVICES in order for the demolition work to be awarded to AJ McNulty and assigned in accordance with the Green Book at the Project.

71.     Pursuant to the New York Plan, LOCAL 40 requested mediation before the BCTC concerning the demolition work being performed at the Project. Mediation hearings were held before Gary LaBarbera wherein representatives of LOCAL 40, Laborers Local 79, Operating Engineers Local 14, Operating Engineers Local 15, and Cement and Concrete Workers Local 20 participated. It was agreed by all the parties at the mediation hearings that the demolition work being performed was the work of LOCAL 40 pursuant to Green Book decisions 70-2c and 70-3c. The parties currently performing the work at the Project agreed that there was no jurisdictional dispute between the Unions concerning the demolition work and agreed to cease and desist.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST BOVIS
### (Breach of Contract)

72.     The Plaintiff hereby repeats, reiterates and re-alleges all the allegations contained in Paragraphs numbered 1 through 71 as fully stated herein.

73.     Pursuant to Article III, Section 2 and Article IV, Section 1 of the New York Plan, BOVIS was required, as the Contractor, to insure that all demolition work at the Project was performed in accordance with Green Book decisions.

74.     Pursuant to Green Book decisions 70-2c and 70-3c, the demolition work at the Project was required to be performed by LOCAL 40.

75.     LOCAL 40 advised and informed BOVIS of Green Book decisions 70-2c and 70-3c.

76.     BOVIS knowingly subcontracted the demolition work at the Project to a contractor that it knew would assign work in violation of the New York Plan.

77.     BOVIS knowingly subcontracted the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-2c.

78.     BOVIS knowingly subcontracted the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-3c.

79.     BOVIS arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of the New York Plan.

80.     BOVIS arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-2c.

81.     BOVIS arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-3c.

82.     The Plaintiff seeks monetary damages for BOVIS' breach of the New York Plan language contained in Article III, Sec. 2, Article IV, Secs. 1,4 for their failure to subcontract and/or assign work in accordance with the New York Plan. Plaintiff is entitled to said monetary damages for BOVIS' breach of contract since BOVIS, by its actions, manipulated subcontracts and/or work assignments in direct conflict with the New York Plan despite the lack of conflicting claims for the work by the unions and an absence of a jurisdictional dispute between unions. Plaintiff demands monetary damages as follows:

(a) LOCAL 40's members have lost wages and continue to lose wages on a daily basis in the amount of $1,226,027.84 as of the date of this Complaint;

(b) LOCAL 40's members have lost fringe benefit contributions and continue to lose fringe benefit contributions on a daily basis in the amount of $1,646,189.80 as of the date of this Complaint;

13

(c) LOCAL 40 has lost working assessment payments and continues to lose working assessment payments on a daily basis in the amount of $55,730.80 as of the date of this Complaint.

83.     Unless otherwise ordered by this court, BOVIS will continue to violate the New York Plan and Green Book decisions 70-2c and 70-3c and by reason thereof, LOCAL 40 and its members will suffer grievous, material and irreparable damage.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST LVI ENVIRONMENTAL
### (Breach of Contract)

84.     The Plaintiff hereby repeats, reiterates and re-alleges all the allegations contained in Paragraphs numbered 1 through 83 as fully stated herein.

85.     Pursuant to Article III, Section 2 and Article IV, Section 1 of the New York Plan, LVI ENVIRONMENTAL, was required, as the Contractor, to insure that all demolition work at the Project was performed in accordance with Green Book decisions.

86.     Pursuant to Green Book decisions 70-2c and 70-3c, the demolition work at the Project was required to be performed by Local 40.

87.     LOCAL 40 advised and informed LVI ENVIRONMENTAL of Green Book decisions 70-2c and 70-3c.

88.     LVI ENVIRONMENTAL knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of the New York Plan.

89.     LVI ENVIRONMENTAL knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-2c.

14

90.    LVI ENVIRONMENTAL knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-3c.

91.    LVI ENVIRONMENTAL arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of the New York Plan.

92.    LVI ENVIRONMENTAL arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-2c.

93.    LVI ENVIRONMENTAL arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-3c.

94.    The Plaintiff seeks monetary damages for LVI ENVIRONMENTAL's breach of the New York Plan language contained in Article III, Sec. 2, Article IV, Sec 1, 4 for their failure to subcontract and/or assign work in accordance with the New York Plan. Plaintiff is entitled to said monetary damages for LVI ENVIRONMENTAL's breach of contract since LVI ENVIRONMENTAL, by its actions, manipulated subcontracts and/or work assignments in direct conflict with the New York Plan despite the lack of conflicting claims for the work by the unions and an absence of a jurisdictional dispute between unions.  Plaintiff demands monetary damages as follows:

(a) LOCAL 40's members have lost wages and continue to lose wages on a daily basis in the amount of $1,226,027.84 as of the date of this Complaint;

(b) LOCAL 40's members have lost fringe benefit contributions and continue to lose fringe benefit contributions on a daily basis in the amount of $1,646,189.80 as of the date of this Complaint;

(c) LOCAL 40 has lost working assessment payments and continues to lose working assessment payments on a daily basis in the amount of $55,730.80 as of the date of this Complaint.

95.     Unless otherwise ordered by this court, LVI ENVIRONMENTAL will continue to violate the New York Plan and Green Book decisions 70-2c and 70-3c and by reason thereof, LOCAL 40 and its members will suffer grievous, material and irreparable damage.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST LVI SERVICES
### (Breach of Contract)

96.     The Plaintiff hereby repeats, reiterates and re-alleges all the allegations contained in Paragraphs numbered 1 through 95 as fully stated herein.

97.     Pursuant to Article III, Section 2 and Article IV, Section 1 of the New York Plan, LVI SERVICES was required, as the Contractor, to insure that all demolition work at the Project was performed in accordance with Green Book decisions.

98.     Pursuant to Green Book decisions 70-2c and 70-3c, the demolition work at the project was required to be performed by a contractor which is a party to a collective bargaining agreement with Local 40.

99.     LOCAL 40 advised and informed LVI SERVICES of Green Book decisions 70-2c and 70-3c.

100.    LVI SERVICES knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of the New York Plan.

16

101.    LVI SERVICES knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-2c.

102.    LVI SERVICES knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-3c.

103.    LVI SERVICES arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of the New York Plan.

104.    LVI SERVICES arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-2c.

105.    LVI SERVICES arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-3c.

106.    The Plaintiff seeks monetary damages for LVI SERVICES' breach of the New York Plan language contained in Article III, Sec. 2, Article IV, Sec 1, 4 for their failure to subcontract and/or assign work in accordance with the New York Plan. Plaintiff is entitled to said monetary damages for LVI SERVICES' breach of contract since LVI SERVICES, by its actions, manipulated subcontracts and/or work assignments in direct conflict with the New York Plan despite the lack of conflicting claims for the work by the unions and an absence of a jurisdictional dispute between unions.  Plaintiff demands monetary damages as follows:

(a) LOCAL 40's members have lost wages and continue to lose wages on a daily basis in the amount of $1,226,027.84 as of the date of this Complaint;

(b) LOCAL 40's members have lost fringe benefit contributions and continue to lose fringe benefit contributions on a daily basis in the amount of $1,646,189.80 as of the date of this Complaint;

(c) LOCAL 40 has lost working assessment payments and continues to lose working assessment payments on a daily basis in the amount of $55,730.80 as of the date of this Complaint.

107.    Unless otherwise ordered by this court, LVI SERVICES will continue to violate the New York Plan and Green Book decisions 70-2c and 70-3c and by reason thereof, LOCAL 40 and its members will suffer grievous, material and irreparable damage for which there may be no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST JV RIGGING
### (Breach of Contract)

108.    The Plaintiff hereby repeats, reiterates and re-alleges all the allegations contained in Paragraphs numbered 1 through 107 as fully stated herein.

109.    Pursuant to Article III, Section 2 and Article IV, Section 1 of the New York Plan, JV RIGGING was required, as the Contractor, to insure that all demolition work at the Project was performed in accordance with Green Book decisions..

110.    Pursuant to Green Book decisions 70-2c and 70-3c, the demolition work at the project was required to be performed by a contractor which is a party to a collective bargaining agreement with Local 40.

111.    LOCAL 40 advised and informed JV RIGGING of Green Book decisions 70-2c and 70-3c.

112.    JV RIGGING knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of the New York Plan.

113.    JV RIGGING knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-2c.

114.    JV RIGGING knowingly performed and/or subcontracted the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-3c.

115.    JV RIGGING arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of the New York Plan.

116.    JV RIGGING arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-2c.

117.    JV RIGGING arranged for, consented and/or approved the subcontracting of the demolition work at the Project to a contractor that it knew would be in violation of Green Book decision 70-3c.

118.    The Plaintiff seeks monetary damages for JV RIGGING's breach of the New York Plan language contained in Article III, Sec. 2, Article IV, Sec 1, 4 for their failure to subcontract and/or assign work in accordance with the New York Plan. Plaintiff is entitled to said monetary damages for JV RIGGING's breach of contract since JV RIGGING, by its actions, manipulated subcontracts and/or work assignments in direct conflict with the New York Plan despite the lack of conflicting claims for the work by the unions and an absence of a jurisdictional dispute between unions.  Plaintiff demands monetary damages as follows:

(a) LOCAL 40's members have lost wages and continue to lose wages on a daily basis in the amount of $1,226,027.84 as of the date of this Complaint;

(b) LOCAL 40's members have lost fringe benefit contributions and continue to lose fringe benefit contributions on a daily basis in the amount of $1,646,189.80 as of the date of this Complaint;

(c) LOCAL 40 has lost working assessment payments and continues to lose working assessment payments on a daily basis in the amount of $55,730.80 as of the date of this Complaint.

119. Unless otherwise ordered by this court, JV RIGGING will continue to violate the New York Plan and Green Book decisions 70-2c and 70-3c and by reason thereof, LOCAL 40 and its members will suffer grievous, material and irreparable damage.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

1. Permanently enjoining Defendants from causing and permitting demolition work, of the kind in question in Green Book Decision 70-2c and 70-3c, to be subcontracted or performed by any employer which is not a party to a collective bargaining agreement with LOCAL 40 at the Project;

2. The Plaintiff seeks monetary damages for Defendants' breach of the New York Plan language contained in Article III, Sec. 2, Article IV, Secs. 1,4 for their failure to subcontract and/or assign work in accordance with the New York Plan. Plaintiff is entitled to said monetary damages for Defendants' breach of contract since the Defendants, by their actions, manipulated subcontracts and/or work assignments in direct conflict with the New York Plan despite the lack of conflicting claims for the work by the unions and an absence of a jurisdictional dispute between unions as follows:

a. Lost wages in an amount to be determined at trial, but not less than $1,226,027.84, with appropriate interest thereon;

      b.        Lost for fringe benefit contributions in an amount to be determined at trial, but not less than $1,646,189.80 with appropriate interest thereon;

      c.        Lost working assessment in an amount to be determined at trial, but not less than $55,730.80, with appropriate interest thereon;

      3.        For the attorneys fees, costs and necessary disbursements of this action; and

      4.        For such other, further and different relief which this court may deem appropriate.

Date:   Garden City, New York
         August 23, 2010

COLLERAN, O'HARA & MILLS L.L.P.

By: _____
     JOHN S. GROARKE (JG-9031)
     1225 Franklin Avenue, Suite 450
     Garden City, New York 11530
     (516) 248-5757
     Attorneys for Local Union 40 of the
     International Association of Bridge,
     Structural, Ornamental, & Reinforcing
     Iron Workers AFL-CIO
     jsg@cohmlaw.com

To:

BOVIS LEND LEASE LMB, INC.
200 PARK AVE
9TH FLOOR
NEW YORK, NEW YORK, 10166

LVI ENVIRONMENTAL SERVICES INC.
80 BROAD STREET
3RD FLOOR
NEW YORK, NEW YORK, 10004

LVI SERVICES INC.
80 BROAD ST
3RD FL
NEW YORK, NEW YORK, 10004

JV TRUCKING & RIGGING, LLC
29 LONGSTREET ROAD
MANALA1PAN, NEW JERSEY, 07726