```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
LOCAL UNION 40 OF THE                   :
INTERNATIONAL ASSOCIATION OF            :
BRIDGE, STRUCTURAL, ORNAMENTAL, &       :    10 Civ. 6362 (DLC)
REINFORCING IRON WORKERS, AFL-CIO,      :
                                        :       OPINION & ORDER
                    Plaintiff,          :
                                        :
               -v-                      :
                                        :
BOVIS LEND LEASE, LMB, INC., LVI        :
ENVIRONMENTAL SERVICES, INC., LVI       :
SERVICES, INC. AND JV TRUCKING &        :
RIGGING LLC,                            :
                    Defendants.         :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
John Stackpole Groarke
Michael Dennis Bosso
Colleran, O'hara & Mills LLP
1225 Franklin Avenue, Suite 450
Garden City, NY 11530

For Defendant Bovis Lend Lease, LMB, Inc.:
Raymond G. McGuire
Aislinn Sydney McGuire
Kauff McGuire & Margolis LLP
950 Third Avenue, 14th Floor
New York, NY 10022

For Defendants LVI Environmental Services, Inc. and LVI
Services, Inc.:
Lyle Stewart Zuckerman
Vedder Price P.C. (NY)
1633 Broadway
47th Floor
New York, NY 10019

For Defendant JV Trucking & Rigging LLC:
Frank Anthony Custode
Porzio, Bromberg & Newman, P.C.,(NJ)

100 Southgate Parkway
Morristown, NJ 07962

Russell John McEwan
Littler, Mendelsohn, P.C., (NJ)
One Newark Center
8th Floor
Newark, NJ 07102

DENISE COTE, District Judge:

Plaintiff Local Union 40 of the International Association of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, AFL-CIO ("Local Union 40") has brought this action for breach of a labor agreement against defendant construction manager Bovis Lend Lease, LMB, Inc. ("Bovis") and its subcontractors LVI Environmental Services, Inc. ("LVI Environmental"), LVI Services, Inc. ("LVI Services") and JV Trucking & Rigging LLC ("JV Trucking").  Because the agreement between the parties requires them to exhaust all contractual remedies including arbitration before bringing suit, the defendants' motions to dismiss are granted.

BACKGROUND

This dispute concerns the demolition of the former Deutsche Bank Building, located at 130 Liberty Street in New York City. The building was badly damaged as a result of the September 11, 2001 terrorist attack.  In October of 2005, defendant Bovis was engaged by the Lower Manhattan Development Corporation, the

current owner of the building, to act as the construction manager for demolition and abatement work at the site.  Bovis is a member of the Contractors' Association of Greater New York, Inc. ("CAGNY"), which in turn is a member of the Building Trades Employer Association ("BTEA").  BTEA has entered into a labor agreement, known as the New York Plan for the Settlement of Jurisdictional Disputes (the "New York Plan") with the Building & Construction Trades Council of Greater New York ("BCTC"), which represents various trade unions.  It is undisputed that Bovis is bound by the New York Plan by virtue of its membership in CAGNY.

Bovis initially contracted with the John Galt Corporation ("Galt") to perform the demolition work at the Deutsche Building site.  Galt employed members of plaintiff Local Union 40 on the demolition; the members worked on the site until August 18, 2007, when demolition came to a halt because of a fire in the building.

After the fire, Bovis decided to engage a different subcontractor, defendant LVI Environmental, to undertake the demolition.  LVI Environmental is a member of the Environmental Contractors' Association ("ECA"), which in turn is a member of the BTEA.  Thus, LVI Environmental is also bound to follow the New York Plan.  LVI Environmental is a subsidiary of LVI Services.  LVI Services provides administrative support for LVI Environmental; it does not directly employ construction workers or have other direct involvement with the construction work.  In

November 2009, LVI Environmental began the demolition phase of the project, using workers not from Local Union 40, but from a different union, Laborers Local 79.

On December 14, 2009, representatives of Bovis, Local Union 40, LVI Environmental, and Laborers Local 79 met to discuss the allocation of the demolition work among the different unions. Local Union 40 argued that prior arbitration awards enforcing the New York Plan required that the demolition work be assigned to Local Union 40.  Local Union 40 alleges that both LVI Environmental and Laborers Local 79 agreed at the meeting that the work rightfully belonged to Local Union 40, but that LVI Environmental continued to employ members of the Laborers Local 79 after Local Union 40 refused to accept concessions to its collective bargaining agreement.  Further, Local Union 40 asserts that after the meeting at least one mediation session was held at which it "was agreed by all the parties . . . that the demolition work being performed was the work of [Local Union 40]."  Attached to Local Union 40's opposition papers were copies of memoranda from two mediation sessions held on December 2, 2009 and March 16, 2010.  The memorandum from the March 16 session notes that the parties "agreed that the work in question will be performed in accordance" with two prior arbitration decisions under the New York Plan.

Local Union 40 filed its original complaint on August 25, 2010 pursuant to Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a).  LVI Environmental and LVI Services moved to dismiss the original complaint on September 21.  Local Union 40 subsequently filed an amended complaint (the "Complaint") on October 29.  On November 15, Bovis filed a motion to dismiss the amended complaint, or in the alternative, for summary judgment; it also asserted a cross-claim for indemnification and contribution against LVI Environmental.  LVI Environmental and LVI Services renewed their motion to dismiss, or, in the alternative, for summary judgment, on November 16.  By Order of November 24, the Court stayed defendant JV Trucking's time to answer the Complaint and LVI Environmental's time to answer Bovis' cross-claim pending its decision on defendants' motions to dismiss.  The motions were fully submitted on December 17, 2010.

DISCUSSION

Defendants primarily argue that this lawsuit should be dismissed because the New York Plan requires that jurisdictional disputes be resolved through arbitration.  Defendants further contend that even if the arbitration requirement does not apply here, the New York Plan prevents Local Union 40 from recovering the damages that it seeks.  The only remedy available under the

5

New York Plan, according to defendants, is the reassignment of work from one union to another.  Moreover, defendants note that since the demolition project has since been completed, even that relief is unavailable here.  In addition, Bovis argues that, as the contract manager, it cannot be held liable for any violations of the New York Plan by its subcontractor LVI Environmental.  The LVI defendants argue that LVI Services is not a party to the New York Plan and thus should be dismissed from the lawsuit.

On a motion to dismiss the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  The court is "not bound to accept as true legal conclusions couched as factual allegations.  Only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009)).[1]

Local Union 40 has failed to exhaust its contractual remedies under the New York Plan.  Thus, it is not necessary to address the defendants' other arguments.

Jurisdiction in this case is premised on Section 301(a) of the Labor Management Relations Act, which provides that federal district courts shall have jurisdiction over suits "for violation

---

[1] The New York Plan is integral to the Complaint and has been submitted by the parties.

6

of contracts between an employer and a labor organization representing employees in an industry effecting commerce . . . ." 29 U.S.C. § 185(a).  The New York Plan, which is the contract at issue here, sets forth a series of procedures for the settlement of jurisdictional disputes.  It "calls initially for mediation of <u>jurisdictional disputes</u> by a representative of both the Trades Council and the Employers' Association.  If mediation fails to resolve the dispute, it is then subject to arbitration, at the request of any party thereto, by the executive committee of the Employers' Association."  <u>Drywall Tapers and Pointers of Greater N.Y., Local 1974 of I.B.P.A.T., AFL-CIO</u>, 954 F.2d 69, 71 (2d Cir. 1992) (emphasis supplied).

The Supreme Court has defined a "jurisdictional" dispute as a dispute "between two or more groups of employees over which is entitled to do certain work for an employer." <u>N.L.R.B. v. Radio & Television Broad. Eng'rs Union</u>, 364 U.S. 573, 579 (1961).  The Second Circuit has also spoken on the subject of which types of labor conflicts constitute "jurisdictional disputes." <u>Construction Indus. Employers Ass'n v. Local Union No. 210, Laborers Int'l Union of N.A., AFL-CIO</u>, 580 F.3d 89 (2d Cir. 2009), involved a dispute between a construction company and a laborers' union over whether the company violated its collective bargaining agreement with the union by hiring members of a carpenters union instead of members of the laborers' union.  <u>Id</u>.

7

at 91-92.  The union attempted to argue that the dispute was not "jurisdictional" because it concerned the union's right to maintain its historical entitlement to perform this type of work, or, alternatively, that it concerned the union's right to represent its members in the dispute.  Id. at 93.  The Second Circuit was not persuaded by these arguments and held that the case was a classic instance of a "jurisdictional" dispute over which union was entitled to perform the work.  Id.

The National Labor Relations Board ("NLRB") has also addressed the question of what constitutes a "jurisdictional" dispute between unions.  The NLRB found that a jurisdictional dispute existed where a construction company continued to employ members of a union other than the plaintiff union throughout the dispute between the two unions and there was "no indication" that either the union or the company ever ordered that the work be reassigned to the plaintiff union.  Local 150, Int'l Union of Operating Engrs., AFL-CIO, 308 N.L.R.B. 1005, 1006 (Sept. 24, 1992).

The dispute at issue here is a "jurisdictional" one for purposes of the New York Plan because it is essentially a disagreement over which union should perform the demolition work.  As in the Local Union No. 210 case, Local Union 40 takes issue with the assignment of the demolition work to another union, asserting that precedent entitles it to perform the work.  Here

too, as in the Local 150 case, Laborers Local 79 never ceased working on the demolition project, and there is no allegation by plaintiffs that LVI Environmental ever directly ordered Laborers Local 79 members to cease work.

Local Union 40 argues that the present dispute over the assignment of demolition work is not "jurisdictional" because LVI Environmental and Laborers Local 79 agreed that the work should be assigned to Local Union 40 at both the December 2009 meeting and the subsequent mediation sessions. Local Union 40 relies on a case from the First Circuit, Shank/Balfour Beatty, A Joint Venture of M.L. Shank, Co. v. Int'l Brotherhood of Electrical Workers Local 99, 497 F.3d 83 (1st Cir. 2007), in which an electrical workers' union argued that electrical work was being performed by non-electricians in violation of its collective bargaining agreement. The First Circuit held that the dispute was not jurisdictional because the non-electricians were not advancing any affirmative claim to the work; rather, their position "was simply that the company should have a free hand in assigning the disputed work to whomever it wishes." Id. at 92. The First Circuit held that the electrical union's rivals were not advancing their own position but rather that of the company; the court therefore characterized the dispute as one between management and the electrical union, rather than as one between rival unions. Id.

Unlike the situation in Shank, Laborers Local 79 has effectively made an affirmative claim to the work by virtue of its continued performance of the demolition. And LVI Environmental states that it definitively assigned the work to Laborers Local 79. Accordingly, the dispute over the demolition work at the Deutsche Bank site is a jurisdictional one that must be resolved according to the dispute resolution mechanisms set forth by the New York Plan.

## CONCLUSION

The defendants' November 15 and November 16, 2010 motions to dismiss are granted.

SO ORDERED:

Dated:    New York, New York
          January 28, 2011

                                              _____
                                              DENISE COTE
                                              United States District Judge